AO 106 (Rev. 04/10)  Application for a Search Warrant

FILED
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

AUG 0 9 2018

# UNITED STATES DISTRICT COURT
### for the
District of New Mexico  ▾

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>Records in the possession, custody, or control of AT&T<br>Mobility, Sprint Coorporation, T-Mobile US, and<br>Verizon Wireless (the "Service Providers") | )<br>)<br>)<br>)<br>)<br>)  Case No.  18mr705 |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Refer to Attachment A

located in the _____ District of _____ New Mexico _____ , there is now concealed *(identify the person or describe the property to be seized)*:

Refer to Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. Sections 1201(a)(1), 2119, 1951, 371, and 2 | Kidnapping, Carjacking, Interference with Commerce by Threats or Violence (Hobbs Act), Conspiracy, and Aiding and Abetting. |

The application is based on these facts:

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Bryan Acee, FBI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: August 9, 2018

_____
*Judge's signature*

City and state:  Albuquerque, New Mexico

Karen B. Molzen, United States Magistrate Judge
*Printed name and title*

AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

## INTRODUCTION AND AGENT BACKGROUND

1.      I, Bryan Acee, being first duly sworn, make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure and 18 U.S.C § 2703 to require AT&T Mobility, Sprint Corporation, T-Mobile US, and Verizon Wireless (hereinafter, the "Service Providers") to disclose certain records pertaining to the cellular telephone towers described in Attachment A, which is attached hereto and incorporated herein. The records and other information to be disclosed are described in Attachment B, which is attached hereto and incorporated herein. The requested records are pertinent to an on-going kidnapping investigation.

2.      I have been a law enforcement officer for approximately 18 years and am employed as a Special Agent with the Federal Bureau of Investigation (FBI). I am assigned to the FBI Albuquerque Field Office, Violent Crime Major Offender (VCMO) squad, where I primarily investigate violent repeat offenders, armed robberies, kidnappings, and FBI fugitives. Prior to my assignment to the VCMO squad, I served on the FBI Safe Streets Gang Task Force in Albuquerque, New Mexico, and the FBI/DEA Hybrid Cross Border Drug Violence Squad in Las Cruces, New Mexico. I was a detective and police officer before joining the FBI.

3.      I have arrested several hundred persons for offenses related to drug distribution, assault, armed robbery, homicide, racketeering offences, gang crimes, firearm violations, and other crimes. I have served as a law enforcement instructor and presenter on drug and gang investigations, and the utilization of confidential informants, at several law enforcement academies and organizations in California, Arizona, Washington, Oregon, and New Mexico.

4.      The facts in this affidavit are based on my personal observations, training and experience, and information obtained from other FBI Special Agents, witnesses and the victim in this matter. This

AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## FACTS AND CIRCUMSTANCES ESTABLISHING PROBABLE CAUSE

5.    On July 26, 2018, at approximately 4:58 a.m., a Dodge pick-up truck can be seen on neighborhood surveillance video stopping briefly in front of victim D.M.'s residence, in Placitas, New Mexico. I believe the driver of the truck dropped two unknown subjects (UNSUBS) off and then drove away. The two UNSUBS disappeared into the darkness near the victim's house.

6.    At approximately 6:00 a.m., the two UNSUBS were observed on neighborhood surveillance video walking around D.M.'s residence, dressed in dark clothing, hats, and masks. Shortly thereafter, victim D.M., a 69-year old male, exited his residence and prepared to travel to work in his Ford truck. As D.M. entered his vehicle, UNSUB 1 wrapped his arms around D.M.'s neck and covered D.M.'s mouth. D.M. started to struggle with UNSUB 1 and observed a second male subject (UNSUB 2) approach with a firearm in his hand. D.M. observed both UNSUBS to have hats or stocking caps on their heads and blue bandanas over their faces. While D.M. struggled to break free of UNSUB 1's grip, UNSUB 2 approached and struck D.M. in the face several times with a pistol. D.M. sustained lacerations to his face and head as a result. Fearing he might be shot, D.M. stopped fighting. The UNSUBS then forced D.M. into the middle seat of his Ford truck. Both UNSUBS displayed firearms during the kidnapping of D.M. and one UNSUB kept a firearm pointed at D.M. as they drove away from D.M.'s residence in D.M.'s truck.

7.    The UNSUBS restrained D.M. and held him at a remote location in the Pajarito Mesa area of Bernalillo County for several hours.[1] The UNSUBS attempted to have D.M.'s family wire several

---

[1] FBI case agents were able to determine the exact location at which D.M. was held based on information from D.M. and geolocation data from of the kidnapper's cellular telephones.

AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

thousand dollars to a bank account in Guadalajara, Mexico. The wire transfer was unsuccessful and D.M. was subsequently released and recovered by law enforcement agents.

8.      FBI Special Agents assigned to the investigation identified one of the UNSUBS as JOSE RAMIREZ, a career criminal with several prior convictions.[2] A key piece of evidence linking RAMIREZ to the kidnapping was the fact that RAMIREZ utilized his T-Mobile cellular telephone to call D.M.'s daughter during the attempted extortion and wire transfer to the bank in Guadalajara, Mexico.

9.      On July 27, 2018, I submitted a criminal complaint and arrest warrant to the U.S. District Court charging RAMIREZ with 18 U.S.C. § 1201(a)(1) Kidnapping, 18 U.S.C. § 2119 Carjacking, 18 U.S.C. § 1951 Interference with Commerce by Threats or Violence (Hobbs Act), 18 U.S.C. § 371 Conspiracy, and 18 U.S.C. § 2 Aiding and Abetting. The complaint and arrest warrant were authorized by U.S. Magistrate Judge Steven C. Yarbrough.

10.     FBI case agents subsequently obtained federal search warrants on RAMIREZ' cellular telephone, to include: historical and real-time cell tower and GPS location data, call detail records, and Google location data.

11.     Between July 27, 2018 and August 4, 2018, FBI Special Agents searched several locations for RAMIREZ, to include locations in New Mexico and California.[3]

12.     On August 2, 2018, two FBI Special Weapons and Tactics (SWAT) teams served a federal search warrant at the location[4] at which D.M. had been held captive. Case agents located evidence

---

[2] RAMIREZ' convictions include: forgery, alien smuggling, drug trafficking, aggravated assault, and being a felon in possession of a firearm.
[3] RAMIREZ' T-Mobile cellular telephone registered in Los Angeles, California, on July 31, 2018. FBI Los Angeles agents responded to the area; however, RAMIREZ was not located.
[4] D.M. was held inside a primitive shed located on a multi-acre compound in the remote Pajarito Mesa area of Bernalillo County, New Mexico.

AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

corroborating the fact that D.M. had been held at the location, as well as evidence indicating RAMIREZ and another subject had been responsible for the kidnapping of D.M.

13.    FBI case agents have been unable to identify RAMIREZ' accomplices in the kidnapping. I believe there were two accomplices: 1) the first accomplice was the UNSUB who helped RAMIREZ kidnap D.M. at gunpoint, and 2) the second accomplice was the person that dropped RAMIREZ and the UNSUB off at D.M.'s residence, just before D.M. was kidnapped.

14.    I am aware of the physical locations of RAMIREZ and D.M. at various times during the kidnapping, and I am aware of RAMIREZ' cellular telephone number during the kidnapping. I believe the FBI can identify the two unknown accomplices by obtaining certain records from the Service Providers. I believe RAMIREZ and the unknown subjects were at, or may have been at, the locations listed below, during the date and time noted.

| | LOCATION<br>cell tower that provided cellular service to location | DATE | TIME[5] |
|---|---|---|---|
| 1 | 06 Vista de Oro, Placitas, New Mexico<br>(Residence) | 7/26/2018 | 4:00 a.m. - 5:30 a.m. MST |
| 2 | GPS coordinates 35.4367825,-106.2895161<br>(I-25 north of Placitas, NM) | 7/26/2018 | 6:15 a.m. - 7:00 a.m. MST |
| 3 | GPS Coordinates 34.983167, -106.834407<br>(Pajarito Mesa, NM) | 7/26/2018 | 12:00 p.m. - 10:45 p.m. MST |
| 4 | 201 Rio Bravo Blvd. SW, Albuquerque, New Mexico<br>(Giant Gas Station) | 7/26/2018 | 10:20 p.m.-11:00 p.m. MST |
| 5 | GPS Coordinates 34.983167, -106.834407<br>(Pajarito Mesa, NM) | 7/27/2018 | 4:00 a.m. - 6:00 a.m. MST |
| 6 | GPS Coordinates 34.04430, -118.24937<br>(Downtown Los Angeles, CA) | 7/31/2018 | 4:40 p.m. - 6:20 p.m. MST |

---

[5] The specific time frames in the requested warrant were determined through statements from the victim and witnesses, video surveillance, and/or cellular telephone records. I added an additional 15-60 minutes to some of the requested times, where I am unsure as to the exact arrival or departure time of RAMIREZ and the unknown subjects.

**AFFIDAVIT IN SUPPORT OF SEARCH WARRANT**

15.    It is my experience that the vast majority of people, including those who commit crimes, are regularly in possession of a cellular or wireless communication devices. Criminals often use their cellular phones prior to and after a crime is committed, as I believe was the case in the instant investigation. I am looking for phone numbers linked to RAMIREZ' accomplices in hopes of identifying the particular device used by those suspects. D.M.'s residence is a significant distance from some of the known locations the kidnappers travelled with D.M., thus providing different cell tower data to analyze. Information supplied by the Service Providers will allow investigators to look for unique cell phones that were present in those areas at the dates and times of interest. Any common numbers present at the different, specified, locations will be considered worthy of follow-up investigation to determine the identity of the persons linked to those devices. This process may be made easier based on the fact that RAMIREZ' cell number is known, and should also be on the towers during the requested periods. I believe the Service Providers maintain the cell towers in the areas outlined in Attachment A, and the records they collect, would significantly narrow the identities of the suspects in the kidnapping of D.M.

16.    Additionally, I am aware that individuals utilize cell phones to conduct kidnappings. This activity includes, but is not limited to: studying and researching the victim's home and work addresses, the victim's social media, accessing maps, arranging dates and times of meetings, locations of meetings, payment amounts to be exchanged, and updates regarding one's whereabouts or one's mode of travel to other parties via phone/voice calls, text messages, and social media.

17.    Accordingly, it is likely that information about subscribers of telephones that were in contact with the cellular telephone towers at the specified dates and times described in Attachment A:

        a.    will identify the telephone numbers that received or made calls during the time period in question, in the area in which the kidnapping occurred;

AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

    b.  may be used to identify the phones used by perpetrators and/or additional witnesses to the kidnapping;

    c.  may indicate, by specifying telephone numbers that repeat at multiple cellular telephone towers during the time periods covered by this affidavit, that certain cellular telephones are the phones of the perpetrators; and/or

    d.  provide other information pertinent to the ongoing criminal investigation.

18.    Accordingly, there are reasonable grounds to believe that the records sought from the Service Providers' cell towers described in Attachment A are relevant and material to the ongoing criminal investigation described herein.

## CELLULAR TELEPHONE TOWERS

19.    In my training and experience, I have learned the Service Providers are companies that provide cellular telephone access to the general public. I also know the Service Providers have technical capabilities that allow them to collect and generate information about cellular telephones to which they provide service, including cell-site data, also known as "cell towers/sector records" or "tower/face information." The Service Providers maintain antenna towers ("cell towers") that serve specific geographic areas. Each cell tower receives signals from wireless devices, such as cellular telephones, in its general vicinity. These cell towers allow the wireless devices to transmit or receive communications, such as telephone calls, text messages, and other data. Towers are often a half-mile or more apart, even in urban areas, and can be ten or more miles apart in rural areas. The tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise that other types of location information, such as E-911 Phase II data or GPS data.

**AFFIDAVIT IN SUPPORT OF SEARCH WARRANT**

20.    In addition to a unique telephone number, each cellular telephone is identified by one or more unique identifiers. Depending on the cellular network and the device, the unique identifiers for a cellular telephone could include an Electronic Serial Number (ESN), a Mobile Electronic Identity Number (MEIN), a Mobil Identification Number (MIN), a Subscriber Identity Module (SIM), a Mobile Subscriber Integrated Services Digital Network Number (MSISDN), an International Mobile Subscriber Identifier (IMSI), or an International Mobile Equipment Identity (IMEI).

21.    Based on my training and experience, I know the Service Providers routinely maintain historical cell-tower log information, including records identifying the wireless telephone calls and communications that used a particular tower. This information is collected and retained by the Service Providers in their normal course of business. For each communication, these records may include the telephone call number and unique identifiers for the wireless device in the vicinity of the tower that made or received the communication ("the locally served wireless device"); the source and destination telephone numbers associated with the communication (including the number of the telephone that called or was called by the locally served wireless device); the date, time, and duration of the communication; the "sectors" (i.e., the faces of the towers) that received a radio signal from the locally served device, and the type of communication transmitted through the tower (such as telephone calls, text messages, or data activity). This information may constitute evidence of the crimes under investigation because the information can be used to identify the unknown subject's phone(s) and may assist in the identification of co-conspirators and/or additional witnesses or victims.

22.    Based on the above facts, there is reason to believe the records described in Attachment B would identify which wireless devices (namely, cellular telephones) were in the vicinity during the events listed above. I believe the requested information will assist law enforcement in determining which persons were present (or not present) during the events listed above.

AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

## REQUEST TO SEAL THIS AFFIDAVIT

23.     I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be FILED UNDER SEAL until further order of the court. These documents discuss an ongoing criminal investigation that is not known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure could seriously jeopardize the investigation, including by giving targets an opportunity to destroy or tamper with evidence, change patterns of behavior, notify co-conspirators, or flee from prosecution.

24.     I further request the Service Providers not notify any person, including individuals whose wireless devices connected to the telephone towers described in Attachment A, of the existence of the search warrant until further order of the Court. Such a requirement is justified because the search warrant related to an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation, and its disclosure may alert the targets to the ongoing investigation. Accordingly, there is reason to believe that notification of the existence of the search warrant will seriously jeopardize the investigation, including, among other ways, by giving targets an opportunity to flee, destroy or tamper with evidence, change patterns of behavior, or notify co-conspirators. Some of the evidence in the instant investigation may be stored electronically. If alerted to the investigation, the subjects under investigation could destroy that evidence, including information saved to their electronic devices.

## CONCLUSION

25.     Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703. I further request that the Court direct the Service Providers to disclose any information described in Attachment B that is within their possession, custody, or control. Because the warrant will be served on the Service Providers, who will then compile

**AFFIDAVIT IN SUPPORT OF SEARCH WARRANT**

the requested records at a time convenient to the Service Providers, reasonable cause exists to permit the

execution of the requested warrant at any time in the day or night.

Respectfully submitted,

Bryan Acee
FBI Special Agent


SUBSCRIBED AND SWORN TO BEFORE ME ON AUGUST _____, 2018:

HONORABLE KAREN B. MOLZEN
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF NEW MEXICO

**ATTACHMENT A**
**PREMISES TO BE SEARCHED**

The search applies to certain records and information associated with the following **AT&T Mobility**, **Sprint Corporation**, **T-Mobile US**, and **Verizon Wireless** cellular telephone towers ("cell towers") that provided service to the following locations at the listed dates and times:

| | **LOCATION**<br>cell tower that provided cellular service to location | **DATE** | **TIME** |
|---|---|---|---|
| 1 | 06 Vista de Oro, Placitas, New Mexico<br>(Residence) | 7/26/2018 | 4:00 a.m. - 5:30 a.m. MST |
| 2 | GPS coordinates 35.4367825,-106.2895161<br>(I-25 north of Placitas, NM) | 7/26/2018 | 6:15 a.m. - 7:00 a.m. MST |
| 3 | GPS Coordinates 34.983167, -106.834407<br>(Pajarito Mesa, NM) | 7/26/2018 | 12:00 p.m. - 10:45 p.m. MST |
| 4 | 201 Rio Bravo Blvd. SW, Albuquerque, New Mexico<br>(Giant Gas Station) | 7/26/2018 | 10:20 p.m.-11:00 p.m. MST |
| 5 | GPS Coordinates 34.983167, -106.834407<br>(Pajarito Mesa, NM) | 7/27/2018 | 4:00 a.m. - 6:00 a.m. MST |
| 6 | GPS Coordinates 34.04430, -118.24937<br>(Downtown Los Angeles, CA) | 7/31/2018 | 4:40 p.m. - 6:20 p.m. MST |



**ATTACHMENT B**
**ITEMS TO BE SEIZED**


For each cell tower described in Attachment A, **AT&T Mobility**, **Sprint Corporation**, **T-Mobile US**, and **Verizon Wireless** are required to disclose the following records:

> the telephone call number and unique identifiers for each wireless device in the vicinity of the tower ("the locally served wireless device") that registered with the tower, including Electronic Serial Number (ESN), Mobile Electronic Identity Number (MEIN), Mobil Identification Number (MIN), Subscriber Identity Module (SIM), Mobile Subscriber Integrated Services Digital Network Number (MSISDN), International Mobile Subscriber Identifier (IMSI), and International Mobile Equipment Identity (IMEI),

during the corresponding timeframe(s) listed in Attachment A.